1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

DIANE HUGHES,

11

                Plaintiff,

12

    v.

13

CAROLYN W. COLVIN, Acting
Commissioner of Social Security

14

              Defendant.

15

CASE NO. 3:15-CV-05532-DWC

ORDER ON PLAINTIFF'S
COMPLAINT

16

      Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the

17

denial of Plaintiff's applications for Supplemental Security Income Benefits ("SSI"). The parties

18

have consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed.

19

R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a

20

United States Magistrate Judge, Dkt. 7.

21

      After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ")

22

did not err in performing a Drug Abuse and Alcoholism ("DAA") analysis, nor did the ALJ err in

23

evaluating Plaintiff's credibility, or in giving less than full weight to the opinions of two of

24

ORDER ON PLAINTIFF'S COMPLAINT - 1

1 | Plaintiff's examining psychologists. Therefore, this matter is affirmed pursuant to sentence four
2 | of 42 U.S.C. § 405(g).

3 | **PROCEDURAL & FACTUAL HISTORY**

4 | On November 30, 2011, Plaintiff filed an application for SSI. *See* Dkt. 10, Administrative
5 | Record ("AR") 196-204. Plaintiff alleges she became disabled on January 1, 2009, due to post-
6 | traumatic stress disorder ("PTSD"), anxiety disorder, depression, and personality disorder. *See*
7 | AR 222.  Plaintiff's application was denied upon initial administrative review and on
8 | reconsideration. *See* AR 129, 135. A hearing was held before an ALJ on July 19, 2013, at which
9 | Plaintiff, represented by counsel, appeared and testified. *See* AR 41.

10 | On August 23, 2013, the ALJ found Plaintiff was not disabled within the meaning of
11 | Section 1614(a)(3)(A) of the Social Security Act. AR 34. Plaintiff's request for review of the
12 | ALJ's decision was denied by the Appeals Council on May 29, 2015, making that decision the
13 | final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20
14 | C.F.R. § 404.981, § 416.1481. On July 30, 2015, Plaintiff filed a complaint in this Court seeking
15 | judicial review of the Commissioner's final decision.

16 | Plaintiff argues the denial of benefits should be reversed and remanded for further
17 | proceedings, because the ALJ erred by: 1) improperly analyzing Plaintiff's DAA impairments; 2)
18 | improperly discounting the opinions of two of Plaintiff's examining psychiatrists; 3) improperly
19 | discrediting Plaintiff's testimony; and 4) as a result of the foregoing errors, making an incorrect
20 | residual functional capacity finding and incorrect findings at Step Five of the sequential
21 | evaluation. Dkt. 12, pp. 1-2.

22

23

24

1                                     **STANDARD OF REVIEW**

2         Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

3 security benefits only if the ALJ's findings are based on legal error or not supported by

4 substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

5 Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is

6 more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable

7 mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747,

8 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

9                                            **DISCUSSION**

10         I.              Whether the ALJ Properly Evaluated Plaintiff's DAA Impairments

11         **A.  Standard**

12         A drug abuse or alcoholism impairment, like any other severe impairment, has the

13 potential to render an individual "unable to engage in any substantial gainful activity," thus

14 meeting the threshold definition of disability under the Social Security Act. *See* 42 U.S.C. §§

15 423(d)(1), 1382c(a)(3)(A). However, in 1996, Congress amended the Social Security Act "to

16 discourage alcohol and drug abuse, or at least not to encourage it with a permanent government

17 subsidy." *Ball v. Massanari*, 254 F.3d 817, 824 (9th Cir. 2001). If an individual only meets the

18 definition of disability *because* of a DAA impairment (whether on its own or in combination

19 with other impairments), the DAA impairment is "a contributing material factor" to the disability

20 finding, and the Social Security Act requires that individual "not be considered to be disabled."

21 Contract with America Advancement Act, Pub. L. No. 104-121, § 105, 110 Stat. 847 (1996)

22 (codified as amended at 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J)). *See also* SSR 13-2p, 2013

23 WL 621536, *4 ("DAA is material to the determination of disability if the claimant would not

24

1  meet [the] definition of disability if he or she were not using drugs or alcohol."). In order to

2  determine whether a DAA impairment is material to a finding of disability,

3      the ALJ must conduct a drug abuse and alcoholism analysis ("DAA Analysis") by
4      determining which of the claimant's disabling limitations would remain if the
    claimant stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b). If the
    remaining limitations would still be disabling, then the claimant's drug addiction
5      or alcoholism is not a contributing factor material to his disability. If the
    remaining limitations would not be disabling, then the claimant's substance abuse
6      is material and benefits must be denied. *Id*.

7  *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007).

8  **B.  Application of Standard**

9      Here, the ALJ found Plaintiff had the severe impairments of substance abuse (a DAA

10  impairment), anxiety disorder, PTSD, personality disorder, major depressive disorder, and

11  migraines/headaches. AR 18. After considering all of these impairments—including the DAA

12  impairment—and performing the full five-step sequential evaluation, the ALJ found Plaintiff to

13  be disabled. AR 22. However, because one of Plaintiff's severe impairments was a DAA

14  impairment, the ALJ proceeded with the DAA analysis mandated by Social Security

15  Administration regulation and rulings. AR 22-34; 20 C.F.R. §§ 404.1535(b), 416.935(b). *See*

16  *also* Social Security Ruling ("SSR") 13-2p, 2013 WL 621536, *corrected at* 2013 WL 1221979.

17  The ALJ found Plaintiff's non-DAA impairments—considered separately from Plaintiff's DAA

18  impairment—resulted in a nearly identical residual functional capacity,[1] with one critical

19

20      [1] In both residual functional capacity findings, the ALJ found Plaintiff was able:

21

22      to perform a full range of work at all exertional levels. [Plaintiff] can perform
    unskilled work with simple repetitive tasks. She cannot have interaction with the
    general public as part of her job duties but she can have occasional, superficial
23      interaction with coworkers. She should deal with things rather than people. She
    would be off-task 5% of the time.

24

1 | exception. While the ALJ found all of Plaintiff's impairments, including the DAA impairment,

2 | would lead Plaintiff to be absent or late no fewer than four times per month, the ALJ found

3 | Plaintiff would not have any absenteeism or tardiness limitations if she were to cease her

4 | substance abuse. AR 20, 23. The Vocational Expert subsequently testified an individual with

5 | Plaintiff's limitations (not including the absenteeism or tardiness limitation) could perform jobs

6 | existing in substantial numbers in the national economy, provided the individual was not absent

7 | from work or late more than one day per month. AR 100-103. As a result, the ALJ found

8 | Plaintiff's DAA impairment was a contributing factor material to the disability determination,

9 | and therefore Plaintiff was not disabled within the meaning of Section 1614(a)(3)(A) of the

10 | Social Security Act. AR 33-34. Plaintiff argues this analysis was erroneous for four reasons.

11 | First, Plaintiff contends the ALJ erred by analyzing the effects of Plaintiff's DAA from

12 | her other severe limitations by comparing Plaintiff's condition before and during an alleged

13 | period of abstinence. Dkt. 12, p. 5-6. However, Plaintiff claims because the ALJ also found

14 | Plaintiff's substance abuse continued throughout the alleged period of abstinence, the ALJ could

15 | not have found Plaintiff had a period of abstinence. *Id.*, *citing* AR 20-21. Plaintiff thereby

16 | contends her residual functional capacity should have been identical with and without the DAA

17 | impairment and the Plaintiff should be found disabled. *Id.* The Court disagrees. "The claimant

18 | bears the burden of proving that drug or alcohol addiction is not a contributing factor material to

19 | [her] disability." *Parra*, 481 F.3d at 748. If the facts of a particular case require a period of

20 | abstinence to separate out Plaintiff's other impairments from her DAA impairments, and no such

21 | period of abstinence is available in the record, the proper result would be to conclude Plaintiff

22 | failed to meet her burden of proving her DAA impairment is not a contributing factor material to

23 | 

24 | AR 20, 23.

1    her disability, and find her *not* to be disabled. *See Laffoon v. Astrue*, 2011 WL 3924810, \*3

2    (W.D.Wash. 2011) (*citing Parra*, 481 F.3d at 749-50 & n.5); *Smith v. Astrue*, 2012 WL 3779769,

3    \*4-6 (E.D. Wash. 2012). *See also Quill v. Washington*, 2014 WL 3608894, \*9-10 (E.D. Wash.

4    2014).  Plaintiff's argument is undermined by the *Parra* court, which reasoned:

5        An alcoholic claimant who presents inconclusive evidence of materiality has no
    incentive to stop drinking, because abstinence may resolve his disabling

6        limitations and cause his claim to be rejected or his benefits terminated. His claim
    would be guaranteed only as long as his substance abuse continues—a scheme

7        that effectively subsidizes substance abuse in contravention of the statute's
    purpose.

8    *Parra*, 481 F.3d at 749-50.

9

10       In any event, the ALJ did in fact rely on a period of abstinence established in the record.

11   The ALJ cited Plaintiff's longitudinal history of urinalysis testing to find Plaintiff last used

12   methamphetamine in July, 2012, and—with the exception of one admitted relapse in May,

13   2013—Plaintiff last used marijuana in November, 2012. AR 20-21, 63, 577, 588-89.[2] The ALJ

14   also observed Plaintiff's mental health symptoms improved between July, 2012 and the date of

15   the hearing. AR 27, 30. For example, the ALJ documented claimant's reports of improvement in

16   her depression in April, 2013 (AR 555), as well as her improvements in timeliness and

17   attendance at mental health court and counseling sessions, most of which occurred after July,

18   2012. AR 30, 590-616, 638-39. This was substantial evidence in support of a period of

19   abstinence, and the ALJ was entitled to rely upon it. *See Martinelli v. Astrue*, 2010 WL 1490591,

20   \*5 (W.D. Wash. 2010) (finding the ALJ properly documented periods of abstinence with medical

21   records reflecting Plaintiff had not used methamphetamines for several months); *Evans v. Colvin*,

22   _____

23       [2] The exhaustive longitudinal urinalysis testing was performed as a requirement of
Plaintiff's ongoing monitoring by Mental Health Court, which appears to be a pretrial diversion

24   program. *See* AR 51-52.


ORDER ON PLAINTIFF'S COMPLAINT - 6

1   2014 WL 4068641, *6 (E.D. Wash. 2014) (suggesting it was proper to conclude the claimant

2   was abstinent from drugs and alcohol for almost one year, based solely on the claimant's

3   incarceration during that time).

4          Second, Plaintiff argues the ALJ was not competent to assess whether Plaintiff had a

5   period of abstinence, but was instead required to call a medical expert to separate out Plaintiff's

6   DAA impairments from her remaining limitations. Dkt. 12, p. 6-7. Plaintiff does not provide, nor

7   can the Court find, any authority which suggests the ALJ was required to consult with a medical

8   expert in order to assess whether Plaintiff had abstained from drugs for a sufficient period of

9   time. Instead, Plaintiff relies upon a general citation to *Day v. Weinberger* for the proposition the

10  ALJ impermissibly acted as her own expert in assessing whether Plaintiff had a period of

11  abstinence. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). However, in *Day*, the court

12  found the ALJ impermissibly went outside of the available medical records to medical textbooks,

13  and used those medical textbooks to make an independent assessment of a claimant's physical

14  condition. *Id.* Unlike *Day*, the ALJ in this case relied upon medical records indicating Plaintiff

15  had continuous periods of sobriety between July and November of 2012, and between

16  November, 2012 and May, 2013. AR 20-21, 577, 588-89. *See Martinelli*, 2010 WL 1490591, *5;

17  *Evans*, 2014 WL 4068641, *6. Materiality findings in the DAA Analysis are reserved to the

18  Commissioner. *See* 20 C.F.R. §§ 404.1527(e) and 416.927(e). *See also* SSR 13-2P, 2013 WL

19  621536, at *8, n. 19.  Further, Social Security Ruling 13-2P indicates an acceptable medical

20  source opinion is not required to assess materiality provided there is a period of abstinence in the

21  record. SSR 13-2P, 2013 WL 621536, at *9. *See also id.* at *8 (noting in the context of physical

22  impairments and their interplay with DAA, "[period of abstinence] evidence  need not always

23  come from an acceptable medical source. If we are evaluating whether a claimant's work-related

24

1 | functioning would improve, we may rely on evidence from 'other' medical sources, such as

2 | nurse practitioners, and other sources, such as family members, who are familiar with how the

3 | claimant has functioned during a period of abstinence"). There was sufficient evidence in the

4 | record for the ALJ to determine Plaintiff had a period of abstinence, and the Court will not

5 | disturb this finding.

6 |        Third, Plaintiff argues the ALJ erred in her DAA Analysis by relying upon Dr. Clifford

7 | Eather's opinion of Plaintiff's functional limitations. Dkt. 12, p. 7. Dr. Eather's opinion was

8 | rendered before Plaintiff had ceased her methamphetamine use in July, 2012. Dkt. 12, p. 7.

9 | Because the ALJ found Plaintiff had disabling limitations when Plaintiff's DAA impairment was

10 | considered, Plaintiff contends the ALJ was required to reject Dr. Eather's less restrictive opinion

11 | as inconsistent with the ALJ's conclusion Plaintiff was disabled when DAA impairments were

12 | considered. The Court disagrees. The ALJ specifically indicated she was not fully adopting Dr.

13 | Eather's opinion into the residual functional capacity finding, because of "later medical records

14 | and the testimony of the claimant which Dr. Eather did not have the opportunity to consider."

15 | AR 29. Further, the ALJ noted Dr. Eather's opinion of Plaintiff's functional limitations was

16 | "supported by the evidence as a whole *in the absence of substance abuse*." AR 22, 23 (emphasis

17 | added). *See also* AR 29. The ALJ was allowed to consider the consistency of Dr. Eather's

18 | opinion with Plaintiff's demonstrated abilities during her period of abstinence in choosing to

19 | give Dr. Eather's opinion more weight. *See* 20 C.F.R. § 416.927(c)(4) (an ALJ may give greater

20 | weight to an opinion which is more consistent with the whole record).

21 |        Finally, Plaintiff argues the ALJ failed to follow the requirements of SSR 13-2P, as the

22 | ALJ failed to provide specific and legitimate reasons supported by substantial evidence for

23 | rejecting the medical opinions stating Plaintiff's disabilities would continue in the absence of

24 |

1   DAA. Dkt. 12, p. 7-8. As discussed in Section III, below, however, the ALJ did offer specific

2   and legitimate reasons, supported by substantial evidence, for giving less than full weight to the

3   opinions of Dr. Wingate and Dr. Kemp. Section III, *infra*. Thus, Plaintiff's argument is without

4   merit.

5          II.       <u>Whether the ALJ Properly Evaluated Plaintiff's Credibility</u>

6          **A. Standard**

7          If an ALJ finds a claimant has a medically determinable impairment which reasonably

8   could be expected to cause the claimant's symptoms, and there is no evidence of malingering, the

9   ALJ may reject the claimant's testimony only "by offering specific, clear and convincing

10  reasons." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12

11  F.3d 915, 918 (9th Cir.1993)). *See also Reddick*, 157 F.3d at 722. However, sole responsibility

12  for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v.*

13  *Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7

14  (9th Cir. 1971); *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). Where more than one

15  rational interpretation concerning a plaintiff's credibility can be drawn from substantial evidence

16  in the record, a district court may not second-guess the ALJ's credibility determinations. *Fair,*

17  885 F.2d at 604. *See also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the

18  evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's

19  decision, the ALJ's conclusion must be upheld."). In addition, the Court may not reverse a

20  credibility determination where that determination is based on contradictory or ambiguous

21  evidence. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That some of the reasons for

22  discrediting a claimant's testimony should properly be discounted does not render the ALJ's

23

24

1  determination invalid, as long as that determination is supported by substantial evidence.

2  *Tonapetyan* , 242 F.3d at 1148.

3  ### B.  Application of Standard

4  In assessing a claimant's credibility, the ALJ may consider "ordinary techniques of

5  credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

6  symptoms, and other testimony which "appears less than candid." *Smolen*, 80 F.3d at 1284. The

7  ALJ may also consider inconsistencies between a claimant's testimony and her activities of daily

8  living. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ documented numerous

9  inconsistencies between Plaintiff's testimony at the hearing, Plaintiff's prior statements, and

10  Plaintiff's activities of daily living. For example, though Plaintiff testified to extreme panic and

11  anxiety in public, the ALJ noted she volunteered at a clothing bank, used public transportation, and

12  went grocery shopping for an hour or more at a time. AR 75-76, 299, 347, 599. Though Plaintiff

13  testified to a history of domestic abuse in California, an extreme fear of running into an individual

14  from California related to her history of abuse, and an inability to return to the state of California,

15  the ALJ noted Plaintiff took a month-long recreational road trip in May, 2013 which included a

16  return to California. AR 53, 75, 553, 567-68, 610-12. Though Plaintiff testified she could not work

17  in part because she could not be separated from her service animal, the ALJ noted she was willing

18  to part from her dog in order to obtain specific housing. AR 89, 597. Though Plaintiff testified she

19  had difficulty adhering to a schedule, the ALJ noted Plaintiff attended numerous mental health

20  court appointments during her period of abstinence, followed a routine, and kept calendars. AR 27-

21  28, 88, 567-574, 590-616. In fact, Plaintiff testified her attendance at appointments has improved

22  since she began working with mental health court. AR 85.  The ALJ noted Plaintiff had previously

23  stated her inability to obtain work arose from preexisting felony warrants, rather than her other

24

1   impairments. AR 536. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) The ALJ also

2   relied upon records indicating Plaintiff's anxiety symptoms were well-controlled through

3   medication. AR 503. *See* 20 C.F.R. § 404.1529(c)(3)(iv) and (v); *Tommasetti v. Astrue*, 533 F.3d

4   1035, 1039-40 (9th Cir. 2008); *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, (9th

5   Cir. 1999). These were clear and convincing reasons, supported by substantial evidence, for the

6   ALJ to discredit Plaintiff's testimony.

7        Plaintiff argues the above-stated reasons were not sufficiently clear and convincing

8   reasons to discount Plaintiff's testimony, as "all of these factors could be valid and still

9   Plaintiff's testimony about her inability to sustain a schedule could be true." Dkt. 12, p. 16. In

10   essence, Plaintiff argues the Court should make a different interpretation of the evidence.

11   However, the ALJ discredited aspects of Plaintiff's testimony which bore directly on Plaintiff's

12   claims of her inability to maintain a schedule. AR 27-28, 88, 567-574, 590-616. Further, the ALJ

13   supported her conclusions concerning Plaintiff's credibility with substantial evidence, and made

14   a rational interpretation of Plaintiff's credibility based on that evidence. As a result, this Court

15   will not disturb the ALJ's credibility findings. *Fair,* 885 F.2d at 604; *Thomas*, 278 f.3d at 954.

16        III.    Whether the ALJ Properly Evaluated the Medical Opinion Evidence

17             **A.  Standard**

18        The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

19   opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d

20   821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v.*

21   *Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an

22   examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must

23   set forth specific, *legitimate* reasons that are supported by substantial evidence in the record."

24

1  *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,* 81 F.3d at 831). The

2  ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and

3  conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v.*

4  *Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the

5  ALJ must explain why the ALJ's own interpretations, rather than those of the doctors, are

6  correct. *Reddick*, 157 F.3d at 725 (*citing Embrey,* 849 F.2d at 421-22). The ALJ "may not reject

7  'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71

8  (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter*

9  *v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons

10  for disregarding [such] evidence." *Flores*, 49 F.3d at 571.

11  **B.  Application of Standard**

12  As part of the DAA Analysis, the ALJ determined Plaintiff would have the residual

13  functional capacity to perform the full range of work at all exertional levels, subject to certain

14  nonexertional limitations, if Plaintiff ceased her substance use. AR 23. However, the ALJ did not

15  find Plaintiff would have any limitations or restrictions relating to absenteeism or tardiness. AR

16  23.  Plaintiff contends this finding was erroneous, as the ALJ failed to offer specific and

17  legitimate reasons to reject the more restrictive mental limitations and global assessment of

18  functioning ("GAF") scores opined to by two examining psychologists.

19  *1.  Fred Kemp, Ph.D.*

20  Dr. Kemp examined Plaintiff on December 22, 2012. AR 329. On mental status

21  examination, Dr. Kemp found Plaintiff was pleasant and cooperative, with normal speech,

22  adequate comprehension, and coherent and goal-directed thought processes. AR 330. However,

23  Dr. Kemp also found Plaintiff's affect was congruent with her stated mood, "antsy, nervous,

24

1   sweaty, and out of it," had marked impairments in her recent memory, and deficiencies in

2   concentration, abstract thinking, insight and judgment. AR 330-31. Dr. Kemp diagnosed Plaintiff

3   with Anxiety disorder, NOS, Depression, NOS, and PTSD. AR 332. As a result of these

4   impairments, Dr. Kemp found Plaintiff would have marked limitations in her ability to make

5   judgments on complex work-related decisions and respond appropriately to usual work situations

6   and changes in a routine work setting. AR 326-27. Dr. Kemp also found Plaintiff would have

7   moderate limitations in her ability to make judgments on simple work related decisions,

8   understand and remember complex instructions, carry out complex instructions and interact

9   appropriately with supervisors, and found Plaintiff would have mild limitations understanding,

10  remembering, and carrying out simple instructions, and interacting appropriately with the public

11  and with coworkers. AR 326-27.

12         The ALJ gave some weight to Dr. Kemp's opinion because Dr. Kemp had the

13  opportunity to observe the claimant during a period of sobriety. AR 30. However, the ALJ did

14  not give full weight to Dr. Wingate's opinion for three reasons:

15         [1] the degree of limitation found by Dr. Kemp is inconsistent with the claimant's
           various activities discussed above, such as attending numerous NA meetings,
16         regularly caring for children, making arrangements to undertake a road trip,
           taking a road trip to various states, taking care of her parents, and laying tile. [2]
17         The degree of limitation found by Dr. Kemp is also inconsistent with the clinical
           observations of the claimant during treatment discussed above, such as having
18         normal speech and being cooperative. [3] Dr. Kemp placed too much reliance on
           the claimant's less than credible complaints.

19
    AR 30 (numbering added). Plaintiff contends these were not specific and legitimate reasons
20
    supported by substantial evidence for giving Dr. Kemp's opinion less than full weight. The Court
21
    disagrees.
22
           First, "when an opinion is not more heavily based on a patient's self reports than on clinical
23
    observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d
24

1   1154, 1162 (9th Cir. 2014). However, this does not mean it is inappropriate to reject a

2   psychologist's opinion when the opinion is based largely on self-reports which have properly been

3   found incredible. *See Tonapetyan*, 242 F.3d at 1149. *See also Woodsum v. Astrue*, 2012 WL

4   1388346 (W.D. Wash. 2012). In the section of Dr. Kemp's opinion pertaining to Plaintiff's

5   functional limitations, Dr. Kemp was asked to identify the factors which support his assessment.

6   AR 326-27. Though Dr. Kemp conducted a mental status examination and record review, Dr.

7   Kemp stated he only relied on "claimant's responses on the Brief Work History, Chief Complaints,

8   and concentration sections of the interview," as the basis for limitations pertaining to Plaintiff's

9   ability to understand, remember, and carry out instructions, and "claimant's responses primarily on

10  the Chief Complaints [and] Brief Work [History] sections" as the basis for limitations pertaining to

11  Plaintiff's ability to interact with supervisors, coworkers, and the public, as well as her ability to

12  respond to changes in her routine work setting. AR 326-27. As the ALJ found Plaintiff's self-

13  reports were incredible, the ALJ properly discounted Dr. Kemp's opinion on this basis.

14         Second, the ALJ cited several of Plaintiff's activities of daily living, such as her regular

15  attendance of NA meetings, her care-giving to her parents and children, and her prior work

16  activity laying tile, as inconsistent with Dr. Kemp's opined limitations. As the ALJ elaborated

17  during her discussion of Plaintiff's credibility, these activities were inconsistent with deficiencies

18  in Plaintiff's ability to concentrate, maintain attention, ability to respond to changes in the

19  workplace, and ability to complete a normal workweek.  The ALJ was allowed to consider these

20  inconsistencies in discounting Dr. Kemp's opinion. AR 27-28, 30, *Burrell v. Colvin*, 775 F.3d

21  1133, 1137-38 (9th Cir. 2014).

22         Finally, the ALJ did not explain, nor is it self-evident from Dr. Kemp's opinion, how

23  Plaintiff's normal speech and cooperative behavior during Dr. Kemp's evaluation was

24

1  contradictory with Dr. Kemp's opined limitations. However, in light of the ALJ's other specific

2  and legitimate reasons for discounting Dr. Kemp's opinion, any error in this reasoning was

3  harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

4      As the ALJ offered specific and legitimate reasons supported by substantial evidence to

5  give less than full weight to Dr. Kemp's opinion, the ALJ did not err.

6                    *2.  Terilee Wingate, Ph.D.*

7      Dr. Wingate examined Plaintiff on December 26, 2012. AR 536.  On mental status

8  examination, Dr. Wingate documented deficiencies in Plaintiff's insight, judgment, ability to

9  parse abstract thought, and memory, but indicated Plaintiff's perception was not impaired by

10  hallucinations or thought disorder, and her thought process and content were within normal

11  limits. AR 539-40. While Plaintiff demonstrated a labile affect and was tearful, depressed, and

12  irritable during the examination, she was also well-groomed, demonstrated logical, linear speech,

13  and was oriented to all spheres. AR 539-40. Dr. Wingate diagnosed Plaintiff with PTSD,

14  personality disorder, NOS, and polysubstance dependence in reported early remission. AR 537.

15  Dr. Wingate opined these conditions would lead to marked limitations in Plaintiff's ability to

16  perform activities within a schedule, maintain regular attendance, be punctual within customary

17  tolerances without special supervision, and in her ability to complete a normal work day and

18  work week without interruptions from psychologically based symptoms. AR 538. Dr. Wingate

19  also opined plaintiff would have moderate limitations in understanding, remembering, and

20  persisting in tasks by following detailed instructions, learning new tasks, performing routine

21  tasks without special supervision, setting realistic goals and planning independently, adapting to

22  changes, communicating and performing effectively, and maintaining appropriate behavior in a

23  work setting. AR 538. However, Dr. Wingate opined Plaintiff had none to mild limitations in

24

1  understanding, remembering, and persisting in tasks by following short and simple instructions,

2  making simple work-related decisions, being aware of normal hazards, and asking simple

3  questions or requesting assistance. AR 538.

4       As with Dr. Kemp, the ALJ gave some weight to Dr. Wingate's opinion because Dr.

5  Wingate's observations occurred during a period of sobriety, and because Dr. Wingate's opinion

6  of Plaintiff's mild to moderate limitations were supported by her observations and her mental

7  status examination. AR 30. However, the ALJ did not give full weight to Dr. Wingate's opinion

8  for two reasons:

9  > [1] her opinion of *marked* limitations is inconsistent with the medical record as a
> whole. Dr. Wingate found marked limitations in the claimant's ability to complete
10 > a normal workweek or even maintain regular attendance. However, the claimant
> has demonstrated that she is able to maintain sufficient attendance to meet her
11 > goals with mental health court. While she did not attend every session, she was
> careful to attend sufficient sessions to be in compliance with treatment [AR 638].
12 > She was also careful to get advanced permission to miss certain sessions in order
> to take her road trip or in order to watch children [AR 566-616]. [2] Clinical
13 > observations of the claimant discussed above also indicate that the claimant was
> generally cooperative and that she improved with sobriety and following her
14 > medication regime.

15  AR 30 (emphasis and numbering added). Plaintiff contends these were not specific and

16  legitimate reasons, supported by substantial evidence, for giving less than full weight to Dr.

17  Wingate's opinion. The Court disagrees.

18       First, Plaintiff argues her mental health court attendance record does not contradict Dr.

19  Wingate's opinion Plaintiff would have marked limitations in maintaining regular attendance, as

20  the mental health court requirements were not "a good proxy for the world of work." Dkt. 12, p.

21  11. Plaintiff notes the vocational expert testified employers would not retain an employee who was

22  absent more than one day per month, yet Plaintiff missed several appointments throughout her

23  year-long tenure with mental health court. AR 101, 590-616. However, the ALJ correctly notes

24

1 | Plaintiff was able to attend sufficient counseling sessions and in-court appearances to remain in

2 | compliance with the requirements of mental health court, and was conscientious in obtaining prior

3 | approval before missing certain sessions. AR 30, 567-73, 596, 599, 601, 608-09, 611, 615. Though

4 | Plaintiff disputes the significance of this evidence, the ALJ's interpretation of Plaintiff's attendance

5 | records is a rational one this Court will not disturb. *Thomas*, 278 F.3d at 954.

6 | Second, Plaintiff argues the ALJ could not elevate Dr. Eather's opinion over Dr. Wingate's,

7 | because the opinion of a non-examining medical reviewer whose opinion was rendered prior to Dr.

8 | Wingate's opinion does not constitute substantial evidence. However, a non-examining physician's

9 | opinion may constitute substantial evidence when it is consistent with other independent evidence

10 | in the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). As the ALJ noted, Dr.

11 | Eather's opinion was consistent with Plaintiff's activities, as well as the record evidence from

12 | Plaintiff's periods of abstinence. AR 22, 23, 29. For example, Plaintiff demonstrated moderate

13 | impairments in concentration, persistence, or pace and in social functioning, but was able to keep

14 | most of her appointments and adhere to a schedule. *See* AR 77 285-291, 299-300, 331, 590-616,

15 | 638. Dr. Eather's opinion was substantial evidence the ALJ could rely upon.

16 | As the ALJ offered specific and legitimate reasons supported by substantial evidence to

17 | give less than full weight to Dr. Wingate's opinion, the ALJ did not err.

18 | *3.   GAF Scores*

19 | In addition to Dr. Wingate and Dr. Kemp's opinions on Plaintiff's functional limitations,

20 | both doctors assigned Plaintiff a GAF score of 45. AR 332, 538. The ALJ gave little weight to all

21 | GAF scores in the record by discussing general methodological problems with GAF scores, the

22 | fact GAF scores are "an attempt to rate symptoms *or* functioning," and the fact GAF scores do

23 | "not have a direct correlation to the severity requirements in our mental disorders listings." AR

24 |

1  31. Plaintiff contends this summary rejection of GAF scores was in error, as the ALJ was

2  required by Social Security Administration regulation to consider GAF scores as opinion

3  evidence requiring the same attention as other functional assessments. Dkt. 12, p. 10, 14. It is

4  true, GAF scores are competent evidence which must be considered by an ALJ. *See Garrison v.*

5  *Colvin*, 759 F.3d 995, 1003 (9th Cir. 2014); *VanBibber v. Carolyn [Colvin]*, 2014 WL 29665, *3

6  (W.D.Wa. 2014) (observing GAF scores constitute medical opinions which cannot be summarily

7  dismissed). However, GAF scores "do not control determinations of whether a person's mental

8  impairments rise to the level of a disability[.]" *Garrison*, 759 F.3d *at* 1002, n. 4. *See also Hughes*

9  *v. Colvin*, 599 Fed.Appx. 765, 766 (9th Cir. 2015) (noting GAF scores "do[] not have any direct

10  correlative work-related or functional limitations."). Importantly, the only GAF scores in the

11  record Plaintiff contends the ALJ failed to properly consider were contained in the opinions of

12  Dr. Wingate and Dr. Kemp. The ALJ fully considered both opinions and offered specific and

13  legitimate reasons, supported by substantial evidence, for giving those opinions less than full

14  weight. *See* Section III(B)(1)-(2), *supra*. Further,  Plaintiff has failed to demonstrate how re-

15  weighing Dr. Wingate and Dr. Kemp's opined GAF scores,  would change the ALJ's residual

16  functional capacity analysis. *See Hughes*, 599 Fed. Appx. at 766 (9th Cir. 2015) (holding any

17  error in failing to consider the GAF score of a treating nurse practitioner was harmless, as the

18  ALJ's residual functional capacity nonetheless incorporated all credible functional limitations,

19  and the claimant failed to identify any additional limitations the ALJ should have imposed in

20  light of the GAF score). Consequently, Plaintiff has not shown how a rejection of these GAF

21  scores caused any harm. *See Molina*, 674 F.3d at 1115-17; *VanBibber*, 2014 WL 29665, *4.

22      IV.    <u>Whether the ALJ Properly Evaluated Plaintiff's Residual Functional Capacity,
and Properly Evaluated Plaintiff's Ability to Perform Other Jobs Existing in</u>

23             <u>Substantial Numbers in the National Economy at Step Five of the Sequential
Evaluation</u>

24

1

2
       Plaintiff argues, in conclusory fashion, the ALJ's residual functional capacity

3
determination is flawed as it did not include all of the limitations associated with all of the

4
plaintiff's non-DAA severe impairments, and instead should have included all of the limitations

5
both she and her doctors articulated. As a result, Plaintiff contends the ALJ's findings at Step

6
Five were erroneous. However, as discussed in Sections I, II, and III, above, the ALJ properly

7
performed a DAA Analysis, properly discounted plaintiff's credibility, properly weighed the

8
medical evidence, and properly evaluated the plaintiff's impairments. Thus, there was no error in

9
the ALJ's assessed residual functional capacity or the Step Five findings, as the residual

10
functional capacity included all of the plaintiff's credible limitations.

11
                                    **CONCLUSION**

12
       Based on the above stated reasons and the relevant record, the undersigned finds the ALJ

13
properly concluded Plaintiff was not disabled. Therefore, the court orders this matter be affirmed

14
pursuant to sentence four of 42 U.S.C. § 405(g). Judgment should be for Defendant and the case

15
should be closed.

16
       Dated this 1st day of February, 2016.

17

18
                                    David W. Christel
                                    United States Magistrate Judge

19

20

21

22

23

24